RENDERED:  MARCH 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0434-MR

THE ESTATE OF JAMES DYE AND
CHRISTINE DYE                                                    APPELLANTS


                    APPEAL FROM HART CIRCUIT COURT
v.              HONORABLE CHARLES C. SIMMS, III, JUDGE
                    ACTION NO. 20-CI-00209


RONALD LEE PHELPS AND
PATRICIA ANNE PHELPS                                              APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Siblings James Dye[1] and Christine Dye (together,

"Landowners") appeal the Hart Circuit Court's denial of their Kentucky Rule of

Civil Procedure ("CR") 60.02 motion to vacate a default judgment entered in favor

---

[1] James Dye passed away during this action and is now represented by his estate.

of Ronald Lee Phelps and Patricia Anne Phelps (together, "Renters"). After review, we reverse and remand for further proceedings.

## I.    BACKGROUND

In December 2020, Renters filed a complaint in Hart Circuit Court alleging they had an "ongoing agreement" with Landowners to purchase land on Friendship Church Road in Magnolia, Kentucky ("the Property"). In their complaint, Renters asserted that they entered into this agreement in January 2001. This agreement included monthly payments of $400 with the full amount going toward the principal, not interest. The Renters asserted both parties "calculated the purchase price in 2001 by having an appraisal done on the [Property] which appraisal amount was $150,000." Renters argued that Landowners were "wrongfully attempting to sale [*sic*] the real estate to a third party[.]" Renters requested the circuit court enforce their "contractual agreement" with Landowners and order Landowners to "convey the [property] upon full and final completion of the terms of the contract[.]" With their complaint, Renters did not submit the contract or any evidence to support the existence of such contract. Six days after Renters filed the complaint, the Hart Circuit Clerk entered proof of service to Landowners. Landowners did not respond.

In February 2021 – 58 days after filing the complaint – Renters filed a motion for default judgment requesting "specific performance of the contract for

deed."  Again, the Renters did not submit a contract, appraisal, or other evidence to support their contention that a contract for deed existed.  Approximately 15 days after filing the motion for default judgment, Renters entered an attorney affidavit acknowledging that James Dye contacted Renters' attorney, but Renters still asked to proceed with the default judgment as this phone call did not constitute an "appearance" before the court.  The circuit court called the matter during its March 2, 2021 civil motion hour via video conferencing.  No one appeared for *either* party, but the court stated, "Looks like that's up for a default judgment so I'll review that file here shortly."  That very day, the court entered an order granting the Renters' motion for default judgment ("Default Judgment") finding that the Renters "have a valid and enforceable contract for deed" with Landowners.

The Default Judgment did not state what factual findings the court relied upon in order to determine that a "valid and enforceable contract for deed" existed between the parties.  In December 2021, Landowners motioned for a hearing through a notarized, handwritten letter.  The letter stated that "[Landowners] had no way to Zoom.  They have a flip phone.  I'm wishing for this motion to be heard in front of [the court]."  And again, in January 2022, Landowners motioned for a hearing.  The court took no action on those motions.

In March 2022, Landowners filed a motion to vacate the default judgment and a motion to file an answer to Renters' complaint pursuant to

CR 60.02(d) and 60.02(f). In this motion, Landowners asserted that the contract between the parties was "never a contract of deed," and "the only written agreement ever signed between the parties was a lease[.]" Landowners explained that another sibling, Virginia Jaggers, had been "charged with getting the lease signed" but that Landowners believed the lease was lost after Virginia died of cancer. Landowners submitted four recent checks they received from the Renters with the motion, three[2] of which stated the payments were for "rent."

Further, Landowners argued relief pursuant to CR 60.02(d) was warranted due to Renters' fraudulent representations. Landowners alleged the Renters "fabricated a false narrative (fraud) in an attempt to lead this Court into believing their claims are based on a contract of deed and not a lease." Landowners noted that no contract of deed was ever filed with the county clerk. Additionally, they argued an oral contract of deed, like the one Renters were presumably alleging, was a clear statute of frauds violation. Further, Landowners asserted the lack of interest in the Renters' $400 monthly payments supported Landowners' assertion that the payments were for rent, not that they were principal-only payments on a contract of deed. Finally, Landowners requested the

---

[2] December 9, 2020 check states "Rent Nov"; June 8, 2020 check states "May & June Rent"; and June 21, 2018 check states "Rent June." The fourth check states "Dec, 2020 payment."

court vacate the default judgment because CR 60.02(f) allowed such relief considering the extraordinary nature of the circumstances.

In November 2022, the circuit court denied Landowners' motion to vacate the judgment ("2022 CR 60.02 Order"). The 2022 CR 60.02 Order simply stated that Landowners were served with the complaint and civil summons in December 2020. In February 2021, Renters motioned for default judgment and again, Landowners were served, but failed to appear at the March 2021 hearing.[3] The 2022 CR 60.02 Order stated that the court found Renters had "a valid and enforceable contract for deed" but did not state how the court reached that conclusion or what factual findings that conclusion was based upon. The court recognized that Landowners had requested a hearing in January 2022, but the court "refused to take any action on this motion" because Landowners "failed to serve their motion on [Renters]."

Further, the 2022 CR 60.02 Order stated that in order for the court to set aside the default judgment, Landowners needed to (1) provide a valid excuse for the default, (2) a meritorious defense to the claim, and (3) the absence of prejudice to the non-faulting party. The court stated that setting aside the default judgment would be inappropriate because Landowners *did not* provide a valid excuse for the default. And yet, the court referred to an excuse by noting

---

[3] Neither party appeared at that hearing.

Landowners informed the court that they did not have the technology to log on the video conference hearing. However, the order noted the court "always had a computer available in the courtroom for those without internet access."[4] Next, the order stated that Renters "would suffer prejudice[,]" but the order did not give any indication as to what that prejudice might be. The court did not address whether Landowners had a meritorious defense to the claim.

In January 2023, Landowners filed a second motion to vacate the Default Judgment and motion to file an answer to Renters' complaint pursuant to CR 60.02(b), 60.02(c), 60.02(d), and 60.02(f). With this motion, Landowners entered a newly discovered copy of the "Residential Lease" signed by Landowners and Appellee Ronald Phelps in November 2000.[5] Landowners discovered this lease in December 2022 "in a bottom of a drawer" while "cleaning and disposing of unwanted possessions" of the now deceased James Dye. Landowners stated, "[i]t was believed prior to this that one of the deceased sisters who was in care of the lease lost it due to an unfortunate fire in and around 2010." In the lease, Ronald Phelps agreed to pay $400 per month in rent for use of the house, yard, and

---

[4] There is no indication of whether the Landowners were made aware of this fact.

[5] We note, this lease is dated close in time to January 2001, the time Renters asserted they entered into "an agreement" with Landowners.

garden. A signed, second document related to the Property's additional acreage, and stated

> [Landowners] lease to Ronald P[h]elps the [Property] and the adjacent 23 acreage.
>
> [Ronald Phelps] agrees to bush hogg off all the land for the use of it.
>
> . . .
>
> This lease is renewable yearly. [Landowners] reserve the right to sell off [a] portion of acreage.

Pursuant to CR 60.02(b), Landowners argued this lease constituted newly discovered evidence. Pursuant to CR 60.02(c) and 60.02(d), Landowners alleged the Renters committed perjury, falsified evidence, and/or committed fraud upon the proceedings by creating a "false narrative that a contract of deed existed[,]" when, "in fact, it never existed." Pursuant to 60.02(f), Landowners argued that relief is warranted under these "most unusual circumstances" because they have "established more than a mere possibility that the outcome of this case would be contrary to the result achieved by the default." Landowners also informed the court that Renters "have failed to pay rent for three months. This violates the Courts['] order to continue to pay rent as long as they occupy the property."

Renters' answered the motion, objecting on procedural grounds, challenging Landowners' failure to use "due diligence" in finding the lease within

-7-

the proper time frame, and arguing that the discovery of the lease "could easily be seen as [Landowners] attempting to fool the courts[.]" Landowners responded, asserting they had "no suspicion that a copy of the lease was in the bottom drawer of a file cabinet" and Appellant Christine Dye is "feeble and requires constant caretakers to see after her: medically, physically, and mentally. This was her condition prior to any legal action in this case." Landowners point to the "extraordinary nature" of the case because "it involves a question of incredible unjust enrichment."

The court held a hearing in March 2023, and after brief arguments, the court took the matter under submission. In April 2023, the court denied Landowners' motion ("2023 CR 60.02 Order"). This 2023 CR 60.02 Order stated, "[s]adly, the recently discovered documents are strong evidence that the parties had a lease agreement; and not a contract for deed. As a result, this Court would obviously prefer to set aside its Default Judgment." Despite this, the court found vacating the Default Judgment would be inappropriate for three reasons. First, the court found fault in Landowners' inaction. Specifically, the court found Landowners failed to provide a valid excuse for default,[6] failed to timely file an answer after being served in December 2020, failed to appear for the default

---

[6] The court noted that Landowners informed the court that they did not have the proper technology to attend the video conference hearing, but because this information came in the form of a motion not served to Renters', the court "could not take any action on this motion."

hearing, and failed to file a motion to set aside the Default Judgment for more than one year.

Second, the court stated that the rules of civil procedure do not permit successive post-judgment motions, and Landowners' CR 60.02 motions include duplicative arguments: "that it was a lease agreement and not a contract for deed." Lastly, the court found the lease was time barred because CR 60.02(b) requires newly discovered evidence to be submitted not more than one year after the judgment and here, "more than one year passed between the Default Judgment and the present motion." Landowners timely appealed this 2023 CR 60.02 Order.

## II.     ANALYSIS

This Court reviews denials of CR 60.02 motions for an abuse of discretion. *Fortney v. Mahan*, 302 S.W.2d 842, 843 (Ky. 1957) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted).

CR 55.02 provides that "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." CR 60.02, in turn, provides, in pertinent part, that

> [o]n motion a court may, upon such terms as are just,
> relieve a party or his legal representative from its final
> judgment, order, or proceeding upon the following
> grounds: . . . (b) newly discovered evidence which by due

-9-

diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; . . . or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken.

CR 60.02.

On appeal, Landowners assert they never agreed to sell the property to Renters, and the trial court erred in denying their second motion to vacate the Default Judgment. Landowners argue that their inaction and procedural mishaps were "honest mistake[s]" and "the result of excusable neglect" due to advanced age and ill health, evidenced in part, by James Dye's *death* during these proceedings. Next, Landowners argue their second motion to vacate is not an unpermitted successive CR 60.02 motion because "[t]here is a difference between having to prove that no oral contract existed between the parties in the first Motion to Vacate compared to a found lease which proves conclusively that no oral contract or [contract of] deed ever existed [in the second Motion to Vacate]."

Further, Landowners argue the court failed to address the Landowners' claims pursuant to CR 60.02(d) and (f) which only require the motions be brought within a reasonable time. Landowners argue CR 60.02(d) justifies relief because in their complaint, Renters "knowingly made deliberate false claims to this Court," and, in fact, Renters' "entire case is based on a

-10-

fraudulent claim of a non-existent contract of deed." And Landowners argue CR 60.02(f) justifies relief because if the Default Judgment is left to stand, the Renters "will be awarded real estate and a residence worth a considerable value based on blatant falsehoods robbing the surviving [Landowner] of her rightful inheritance."

Conversely, Renters argue the trial court did not err in denying the Landowners' motions to vacate the Default Judgment. Renters argue relief pursuant to CR 60.02 is an extraordinary remedy intended to vacate judgments upon facts or grounds that could not have been discovered until after rendition of the judgment. Here, Renters argue, the lease could have been timely discovered before the judgment, and therefore CR 60.02 relief is not warranted. Additionally, Renters argue Landowners' inaction and delay should not be overlooked, and their second CR 60.02 motion is successive and therefore not procedurally permitted.

Here, the Renters' complaint appears to be, at best, deliberately vague, and at worst, taken in bad faith. In their complaint, Renters state they had an "agreement" with Landowners. The complaint does *not* state if that "agreement" was an oral agreement or written agreement. The complaint does *not* state whether Renters always had a contract for deed or if a lease was later converted into a contract for deed. The complaint gives no indication as to why the parties agreed upon the abnormal *principal only* payments with no interest. Strangely, according

-11-

to their complaint, while Renters did not need to pay any interest on a thirty-plus

year contract for deed, they expected *Landowners* to pay interest. In their

complaint, Renters requested a lien for interest for improvements they made upon

the property. Further, while we understand the "everything-and-the-kitchen-sink"

approach is common practice with complaints, it was disingenuous for the Renters

to claim they had an "agreement" to purchase the property and then, two pages

later, claim hostile adverse possession.[7] Such a discrepancy calls into question the

veracity of the entire complaint. We, as an appellate court, are not factfinders;

however, we reference these elements of the complaint to aid in our discussion.

Kentucky courts "disfavor" default judgments. *Asset Acceptance,*

*LLC v. Moberly*, 241 S.W.3d 329, 332 (Ky. 2007) (citation omitted). And there is

a strong public policy in favor of resolving cases on the merits. *Ky. Farm Bureau*

*Mut. Ins. Co. v. Conley*, 456 S.W.3d 814, 818 (Ky. 2015) (citing *Ready v. Jamison*,

705 S.W.2d 479, 481-82 (Ky. 1986)). Here, the Default Judgment found the

Renters had "a valid and enforceable contract of deed with the [Landowners]."

This order does not indicate how the court found the existence of a valid,

enforceable contract for ownership of property in the absence of any evidence.

Renters did not submit with their motion for default judgment any contract,

---

[7] Adverse possession is defined as "[t]he enjoyment of real property with a claim of right when that enjoyment is opposed to another person's claim and is continuous, exclusive, hostile, open, and notorious." *Adverse possession*, BLACK'S LAW DICTIONARY (11th ed. 2019).

affidavits attesting to knowledge of a purchase agreement, communications between the parties referencing a contract for deed, or receipts or copies of payments to Landowners marked as installment payments on a contract for deed.

While we understand full discovery would not have been procedurally proper, a default judgment transferring property ownership must still be supported by some evidence. *See* CR 55.01 ("If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account . . . or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court, without a jury, shall conduct such hearings or order such references as it deems necessary and proper[.]"). This is especially necessary here, in light of the Statute of Frauds restrictions on oral contracts for real estate. *See* Kentucky Revised Statute 371.010(6) ("any contract for the sale of real estate, or any lease thereof for longer than one year" must be in writing and signed by the party).[8]

---

[8] Additionally, we note, the speed at which the court essentially transferred property ownership during a national health crisis is troubling. *See Beshear v. Acree*, 615 S.W.3d 780, 789 (Ky. 2020) (citation omitted) ("On January 31, 2020, the United States Department of Health and Human Services declared a national public health emergency . . . based on the rising number of confirmed COVID-19 cases in the United States."). The Renters' filed their complaint in December 2020, motioned for default judgment in February 2021, and the court granted that motion in March 2021. This short timeframe all occurred *during a global pandemic*. (The federal Public Health Emergency for COVID-19 began on January 31, 2020 and expired on May 11, 2023. Office of Inspector General, U.S. Department of Health and Human Services, COVID-19 Portal, *as modified* March 10, 2023, https://oig.hhs.gov/coronavirus/covid-flex-expiration.asp.) We appreciate proficiency and compliance with the time limitations within our procedural rules, but we cannot sacrifice our prudence in the pursuit for judicial efficiency.

Next, we look at the court's denial of Landowners' CR 60.02 motions. CR 60.02 relief is an extreme remedy, but it is also a "safety valve" allowing the courts to correct a wrong. *Kurtsinger v. Bd. of Trs. of Ky. Ret. Sys.*, 90 S.W.3d 454, 456 (Ky. 2002). "The court on a motion under CR 60.02 may relieve a party from that court's final judgment if that judgment is no longer equitable." *Urban Renewal & Cmty. Dev. Agency of Louisville v. Goodwin*, 514 S.W.2d 190, 191 (Ky. 1974). "[A]ll relief under CR 60.02 is relief of an extraordinary nature, as it forces a final judgment to be vacated." *Bruner v. Cooper*, 677 S.W.3d 252, 268 (Ky. 2023). Specifically argued here, CR 60.02(f) allows relief from a final judgment for "any other reason of an extraordinary nature justifying relief." Before us, we have such a situation.

Here, the 2022 CR 60.02 Order correctly stated that in order to set aside the Default Judgment, Landowners needed to show a valid excuse for the default, a meritorious defense to the claim, and the absence of prejudice to the nonfaulting party. *S.R. Blanton Dev., Inc. v. Invs. Realty & Mgmt. Co., Inc.*, 819 S.W.2d 727, 729 (Ky. App. 1991) (citation omitted). However, the circuit court's application of that rule gives us pause. The 2022 CR 60.02 Order denies the Landowner's motion to vacate the Default Judgment because Landowners "failed to provide a valid excuse for the default." However, the Landowners' presented an excuse: inaccessibility to technology for video conferencing. While not an

-14-

actionable motion, the court referenced a notarized hand-written letter putting the court on notice that Landowners did not have the technology to attend a video conference. Presumably, the court did not find this excuse to be "valid" because "a computer was available in the courtroom." Further, the 2022 CR 60.02 Order stated that the Renters "would suffer prejudice[,]" but the court did not give any indication as to what that prejudice might be.

Further, an "appearance" to prevent a default judgment is not limited to only procedurally perfect, actionable motions. *Leedy v. Thacker*, 245 S.W.3d 792, 796 (Ky. App. 2008) (finding a hand-written notice to the court – that did not meet strict procedural requirements – was still sufficient notice to avoid default judgment).[9] "The word 'appeared' as it is employed in CR 55.01 [the default judgment civil procedure rule] has been construed to mean that 'the defendant has voluntarily taken a step in the main action that shows or from which it may be inferred that he has the intention of making some defense.'" *Id.* (citing *Smith v. Gadd*, 280 S.W.2d 495, 498 (Ky. 1955)). Here – *before* the court denied Landowners' first motion for relief pursuant to CR 60.02 – the Landowners informed the court that they had contacted Renters' attorney, that their representative contacted Renters' attorney, and that Landowners had contacted the

---

[9] In *Leedy*, the "error" in question was a missing return address on the defendant's answer and the defendant replied *before* the court entered the default judgment. *Id.* at 794. Although factually distinct from the situation before us, we nonetheless find this case informative.

court directly *twice*. Clearly the Landowners were attempting to make some defense. This could have been an opportunity for the circuit court to use its broad discretion for further inquiry.

Finally, the 2023 CR 60.02 Order – the order on appeal – warrants closer consideration. This order does not reference any evidence – beyond the arguments in the Renters' complaint – to support the Renters' contention that a contract for deed existed. In fact, this order denied relief from the Default Judgment despite finding "strong evidence that the parties had a lease agreement; and not a contract for deed." In short, the court found a contract for sale of land by a Default Judgment where none likely existed, but still held Landowners to strict compliance with procedural rules. Also, the 2023 CR 60.02 Order claimed Landowners' second CR 60.02 motion was not permitted by our rules of civil procedure because its argument was duplicative from their first CR 60.02 motion.

True, Kentucky Rules of Civil Procedure do not permit successive post-judgment motions "which could have been raised in prior proceedings." *Stoker v. Commonwealth*, 289 S.W.3d 592, 597 (Ky. App. 2009) (citation omitted). However, Landowners' CR 60.02 arguments are distinct, and, in each motion, Landowners asked the court to address different allegations. Landowners' first motion for relief pursuant to CR 60.02 – submitted one year and six days after the court entered the Default Judgment – argued relief from the judgment was proper

-16-

because the Renters had not proven the existence of the contract for deed.[10]  Then –

just sixty-four days after that motion was denied – Landowners moved again for

relief.  However, in the second CR 60.02 motion, Landowners argued that relief

was warranted because they now had new evidence to show the Renters' complaint

was taken in bad faith and the court had been misled into granting a default

judgment.[11]  As these CR 60.02 motions are rooted in distinct arguments and offer

new grounds for relief, they are not "successive" CR 60.02 motions.  *See Cranmer*

*v. Commonwealth*, No. 2019-CA-0245-MR, 2022 WL 1592869 (Ky. App. May 20,

2022) (finding a CR 60.02 motion successive because it "raise[d] no new or

additional grounds and simply rehashe[d] the unpersuasive arguments contained in

[an] earlier CR 60.02 motion.").[12]

 Further, the 2023 CR 60.02 Order denied the Landowners' motion

because the lease, their "newly discovered evidence," was submitted outside the

one-year statutory limitation of CR 60.02(b).  However, newly discovered

---

[10] Landowners argued, in part, "no contract of deed or lease was ever recorded in this Hart County Clerk's office" and Renters "allege that the lease payments made were actually princip[al] payments without any evidence there was a contract of deed . . . or any evidence there was an agreement to change the terms from lease payments to principal payments."

[11] Landowners argued, in part, "[Renters] have attempted to create at the beginning a false narrative that a contract of deed existed.  In fact, it never existed.  [Renters] engaged in a devious attempt to present to this court that all the payments made to [Landowners] were in fact principal payments per a contract of deed and not lease payments.  This new evidence conclusively proves that the Plaintiffs were engaged in an attempt to have this Court believe otherwise."

[12] This case is unpublished, and therefore it is only persuasive, not binding.  Kentucky Rule of Appellate Procedure 41.

evidence may *also* be included within a claim for relief pursuant to CR 60.02(f). *Bruner*, 677 S.W.3d at 266 ("[A] CR 60.02 motion may be brought on the basis of new evidence without having to be addressed under CR 60.02(b)."). And yet, the 2023 CR 60.02 Order failed to address the arguments Landowners made pursuant to CR 60.02(d) and CR 60.02(f). CR 60.02(f) is the "'catch-all provision' reserved only for those circumstances wherein a petitioner cannot show entitlement to relief under CR 60.02(a)-(e)[.]" *Id.* at 268 (citation omitted). Here, the lease may be considered part of the Landowners' CR 60.02(f) request for equitable, extraordinary relief as it was brought forth within a reasonable amount of time. *See Bruner*, 677 S.W.3d at 266.

Finally, we conclude giving each party the opportunity to argue the merits of their argument is the just result.

> As Kentucky's highest court noted in a case that involved the setting aside of a default judgment nearly a century ago, "[i]f appellant does not owe the money claimed by appellee, it would be a grave injustice to require him to pay it. It is all-important that courts exercise their discretion liberally, to the end that justice may be done, when in so doing no injustice is done to another."

*Cinque v. Lexington Village, LLC*, 609 S.W.3d 30, 36 (Ky. App. 2020) (quoting *Steuerle v. T.B. Duncan & Co.*, 299 S.W. 205, 206 (Ky. 1927)).

If ever there was a time for grace, this is it. Three siblings were involved with signing a lease and that lease's safekeeping. Now two of those three

siblings have passed away, and the third is elderly and infirm. There is "strong evidence" to suggest the siblings had a lease, but because they did not perfectly, timely respond during the pandemic, the court granted Renters a hasty default judgment rooted in an unsupported complaint and motion. We make no final judgments as to the veracity of the witnesses or the validity of the contracts presented by Landowners; that is the role of the trial court. But justice requires, under these circumstances, we remand to allow each party their day in court. The trial court abused its discretion by denying Landowners' second CR 60.02 motion.

### III. CONCLUSION

The 2023 CR 60.02 Order denying Landowners' motion pursuant to CR 60.02 is REVERSED. The case is REMANDED to the Hart Circuit Court with directions the court shall enter orders setting aside the Default Judgment and allow the case to proceed.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Dennis Keith Wilcutt<br>Glasgow, Kentucky | Jackson Gillock<br>Elizabethtown, Kentucky |